| | |
|---|---|
| **DIRECTV, INC., a California corporation,**<br><br>      **Plaintiff,**<br><br>    **v.**<br><br>**David Annand,**<br><br>      **Defendant**. | No. 03-cv-12325 MLW<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S SECOND MOTION FOR DEFAULT JUDGMENT** |

## I. Procedural History

A four count Complaint was filed against this Defendant on or about November 20, 2003. In hand service was made on the Defendant on or about February 10, 2004.  After the Defendant failed to appear or to plead responsively he was defaulted; the Plaintiff made its first Motion for a Default Judgment on or about May 17, 2004.

Before the Court acted on the first Motion for Default Judgment and in response to this Court's order in a similar civil action, the Plaintiff filed an Amended Complaint in this action on or about October 5, 2004. The Amended Complaint contains two Counts, but the Amended Complaint contained a modified remedies provision which provided that in the event of a default DIRECTV will seek:

> "…an award of statutory damages of *up to $10,000* for violations of 47 U.S.C. § 605(a), a further award of DIRECTV's reasonable attorneys' fees in the amount of $850.00 and costs" *(emphasis added)*

The Defendant failed to appear or to file a responsive pleading with reference to the Amended Complaint.  This Court entered a Default against the Defendant on July 13, 2005.  The Plaintiff has now made a Second Motion for Default Judgment against the Defendant.  This Second Motion for Default Judgment is in accordance with the default remedy provision in the Amended Complaint set forth above.

Page  1

## II. Liability

**1, The Well-Pled Facts**

The Default already entered in this action against the Defendant is similar to a finding of liability against the Defendant in that a party's default is essentially deemed to constitute a concession to the well-pled allegations of liability. See, *Almedia v. Secretary of Health Education of Welfare*, 622 F. 2d 1044 (1st Circuit 1980). The Plaintiff is seeking judgment for violations of 47 U.S.C. § 605(a) as set forth in Count I of the Complaint. Based upon the default that pertinent well pled facts regarding liability for violations of 47 U.S.C. § 605(a) are as follows:

    a. Plaintiff is a direct satellite broadcaster, delivering over 225 channels of television and other programming to its residential and business customers on a subscription and pay-per-view basis only

    b. Plaintiff encrypts – electronically scrambles – its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming.

    c. Upon activation of an account, the Plaintiff provides its legitimate customers a DIRECTV Access Card;

    d. With a DIRECTV Access Card and other system hardware, a legitimate customer can receive and view in a decrypted format (*i.e.*, unscrambled) only those channels and programs to which the customer has subscribed or otherwise made arrangements to purchase from Plaintiff;

    e. It is possible for dishonest individuals to covertly obtain the Plaintiff's signals, without authorization and without payment for them, through a variety of methodologies, including, but not limited to, utilizing illegally modified DIRECTV Access Cards and utilizing other related equipment: devices that are primarily of assistance in the unauthorized interception

or reception of DIRECTV's satellite television programming (all collectively hereinafter referred to as "Pirate Access Devices").

    f.    On or about January 25, 2001 the Defendant purchased and thereafter possessed a Pirate Access Device, a so-called "Unlooper".

    g.    Thereafter, the Defendant utilized the Pirate Access Device for the unauthorized interception of the Plaintiff's satellite television signals

    h.    All of the Defendant's actions were undertaken willfully and knowingly.

## 2. The Case Without Default

Even without the Defendant's Default, the Plaintiff still has a strong case against the Defendant. Possession of a television descrambling device is sufficient evidence from which a trier of fact could infer that the device was used to descramble the Plaintiffs television signals. The decision in the Florida District Court case of *DirecTV v. Miller*, Case no 6:03-cv-1027-Orl-19KRS (a copy of the unpublished case is attached hereto as "**Exhibit A**") supports this proposition. In the *Miller* case, this same Plaintiff, DIRECTV, had evidence that the defendant possessed the same type of a satellite television descrambling device which is the subject of this Civil Action, an "unlooper". The defendant in the *Miller* case moved for Summary Judgment against DIRECTV contending that DIRECTV lacked the necessary "direct evidence" such as eyewitness testimony or videotape of some wrongdoing. The Court rejected this argument stating:

> A reasonable jury could conclude that the defendant illegally stole DirecTV's programming. Based on their life experience, a jury could reasonably assume that people only buy electronic equipment such as televisions, computers, or (in the case of Defendant) satellite piracy unloopers when they plan to use such equipment. It would be a strange world, after all, if people regularly bought such equipment and then put it in the closet to collect dust. *Id* at 7

Page 3

This Defendant's Possession of an Unlooper is analogous to the defendants' possession and installation of non-addressable coaxial cable television descramblers (sometimes referred to and hereinafter referred to as black boxes) in the case of *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), <u>aff'd</u>, 224 F.2d 430 (2d Cir. 2000) and see *DIRECTV Inc. v. Minor* --- F.3d ----, 2005 WL 1870779 (a copy of the yet to be published case is attached hereto as **"Exhibit B"**), contrast with *DIRECTV Inc. v. Robson* --- F.3d ----, 2005 WL 1870775 (a copy of the yet to be published case is attached hereto as **"Exhibit C"**).,[1] In *Community Television Systems*, there was evidence that the defendants purchased and installed cable black boxes that would allow them to illegally view the plaintiff's cable television programming. *Id*. at 456. Although there was no so-called "direct" evidence that the defendants had ever actually used the devices, the court nonetheless found the defendants liable for using the devices. After noting that the defendants had engaged in the transactions of obtaining descrambling devices from a distributor named "Radil" the court said:

> Based on the record here, the most reasonable inference is that each such

---

[1] The Plaintiff has moved forward for Default pursuant to 47 U.S.C. § 605, a provision of Title 47 which prohibits the unauthorized utilization of interstate radio-originated communications (satellite television signals). Another provision of Title 47, § 553, prohibits the unauthorized interception of television signals from the cable television system.  Section 605 is similar to Section 553. While there may be certain differences in the statutes regarding statutory damages both statutes essentially bar the unauthorized interception of television signals. The evidence utilized by cable television companies and satellite television companies to prove unauthorized interception of their signals in violation of their respective statutes is extremely similar

In fact, the Second Circuit has held that where there is an unauthorized interception of signals from a coaxial cable, and the signals intercepted from the cable include interstate radio-originated communications, both §605 and §553 are violated.  See *International Cablevision, Inc. v. Sykes* ("Sykes I"), 997 F. 2d 998, 1007 (2d Cir. 1993); *International Cablevision, Inc. v. Svkes* ("Sykes II"), 75 F.3d 123, 131 n.4 (2d Cir. 1996); but see  *Charter v Burdulis* 367 F.Supp.2d 16 (D. Mass 2005)   In any event, even if § 605 might not apply to unauthorized cable television violations in the District Massachusetts,  cases decided pursuant to 47 U.S.C. §553 are, at least, analogous or similar to § 605 cases.  Accordingly, the Plaintiff asks the Court to regard citations to §553 cases as persuasive authority.

>transaction was engaged in with Radil so the Descrambler could be used for its intended purpose, namely to receive cable services over TCI's system; there is no evidence of non-use or any other use. Thus, the court concludes that each of the named defendants used in benefited financially from the Descrambler sold by Radil*, commencing in 1992 Id*. at 460.

In one of the few cases where a Federal Appellate Court dealt with end-user television piracy, the Second Circuit affirmed the pertinent elements of the Connecticut District Court's liability decision in the *Caruso* case. In fact, the Second Circuit stated that the purchase and installation evidence was ***"at least"*** enough evidence for a rebuttable presumption of use. The court said:

> "In the pending case, the seller's computer records showed the names of the [defendants] and the devices were installed in their home. That evidence suffices to create ***at least*** a rebuttable presumption that each of them is liable." *Community Television Systems, Inc. v. Caruso*, 284 F.3d 430, at 432 (2nd Cir. 2002) *(emphasis added).*

Where, as in this civil action, the records of an illegal distributor identify a defendant as the purchaser and recipient of a television descrambling device other District Courts have found that an inference that the television descrambling device was used to descramble television signals can still be made even where the defendant testifies that:

1. He "lent his credit card" to someone else and he did not know what that person was buying; See *DIRECTV, Inc v McCool*, 339 F.Supp.2d 1025 (M.D. Tenn. 2004) or
2. Despite the illegal distributor's records, he never made the subject purchase *DirecTV, Inc. v. Griepsma,* 2005 WL 608250 (W.D.N.Y. 2005). (a copy of the unpublished case is attached hereto as "**Exhibit D**") ;

### 3. <u>Liability Pursuant to Title 47 U.S.C. § 605(a) Established From Default</u>

Title 47 U.S.C. 605 (a) of the Communications Act provides, in part, that:

"…No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any

Page 5

>information therein contained) for his own benefit or for the benefit of another not entitled thereto …"

By virtue of the default in this action, the Defendant has essentially conceded to the well-pled facts that established that the Defendant knowingly intercepted and utilized the Plaintiff's interstate radio communications, its encrypted satellite television signals, without authorization. Additionally, without any defense to the contrary the reasonable inference to be drawn from the Plaintiff's factual allegations is that the Defendant engaged in the unauthorized interception of the Plaintiff's satellite television signals.  Accordingly, the Plaintiff contends that it has established that the Defendant violated Title 47 U.S.C. 605 (a).

### III.  Statutory Damages

**1. Statutory Damages for Violations of Title 47 U.S.C. §605(a)**

Title 47 U.S.C. §605(e) deals with damages and remedies available in a civil action to an aggrieved party from a defendant who has violated provisions of §605(a).  Title 47 U.S.C. §605(e)(3)(C)(i)(II) provides for statutory damages of not less than $1,000.00 or more than $10,000.00 as the court considers just for each violation of subsection (a) by the unauthorized interception of signals.

**2. The Assessment of Statutory Damages Pursuant to 47 U.S.C. §605(e)**

While the language of Title 47 U.S.C. §605(e) provides little guidance on the assessment of statutory damages, courts have used a variety of methods when assessing statutory damages including:

a. **Estimating actual damages**. See *Cablevision v Lokshin*, 980 F. Supp. 107 (E.D.N.Y. 1997);

b. **Assessing additional damages as a form of deterrence.** See *Joe Hand Promotions, Inc. v. Salinetti* 148 F, Supp. 2d 119 (D. Mass. 2001); *Time Warner v Domsky*, No. 96 Civ. 6851, 1997 U.S. Dist. LEXIS 13505 (S.D.N.Y. Sept. 2, 1997) (a copy of the unpublished decision is attached here to as **"Exhibit E"**), and *Cablevision v Collins* 2004 WL 1490307 (S.D.N.Y. 2004) (a copy of the unpublished decision is attached here to as **"Exhibit F"**);

c. **Assessing statutory damages by considering the totality of circumstances**. See *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), <u>aff'd</u>, 224 F.2d 430 (2d Cir. 2000).

### A. Estimate of Actual Damages

The Plaintiff's estimate of actual damages comes from information supplied by the Plaintiff's employee by affidavit filed here with. The two main elements of the calculation are:

  a. The length of time the unauthorized interception occurred by way of an estimate of number of months; and
  b. A conservative dollar value for a month of unauthorized interception.

In this case, the Plaintiff contends that the unauthorized interception probably started before January of 2001 but for the purpose of this motion, Plaintiff contends that the unauthorized interception clearly was taking place when the piracy device was purchased in January of 2001. The ending date for the unauthorized interception of signals would appear to be in late April of 2004 when the Plaintiff switched to a new generation of of access card. As far as the Plaintiff can tell at this point, the devices purchased by the Defendant would not work for the unauthorized interception of signals after April 2004. Accordingly, the Plaintiff contends that the length of unauthorized interception of signals was at least 39 months, from January of 2001 through April 2004.

As for the dollar amount of damages per month, the Plaintiff contends that a reasonable number to use is the amount per month that its legitimate high-end paying customers have paid. Specifically, the top 10% of legitimate paying customers in 2003 paid an approximate average of $229.08 per month for subscriptions and pay-per-view services. This is a conservative and reasonable number to use as a monthly damage amount.

It is reasonable to infer that an individual utilizing a descrambling device that would give that person access to all signals, all stations, all pay-per-view events and all pay-per-view movies (including adult selections) 24 hours a day seven days a week would view television at least as much as individuals that have had to pay for those services. In fact, with payment no longer being an issue, the individual utilizing an unauthorized interception device would probably view television more than the high-end legitimate purchaser of signals.

Accordingly, the reasonable estimate of damages for this Defendant is at least 39 months of programming, (from purchase of the Unlooper in January 2001 until April of 2004, when DIRECTV shutdown its P3 data stream) valued at $8,934.12. This is actually a low estimate of damages because the unauthorized interception is likely to have been going on before the purchase of the Unlooper (see Affidavit of Whalen).

### B. Assessing Additional Damages as a form of Deterrence

The Honorable Judge Michael Ponsor approved the report of Magistrate Judge Neiman that assessed additional *baseline* statutory damages against a defendant in an amount five times his estimate of actual damages pursuant to Title 47 U.S.C. §605(e)(3)(C)(i)(II) in this District in the case of *Joe Hand Promotions, Inc. v. Salinetti* 148 F, Supp. 2d 119 (D. Mass. 2001), but see *Charter v Burdulis* 367 F.Supp.2d 16 (D. Mass 2005) and *Kingvision Pay-Per-View v. Longthorne et al*. No. Civ.A. 01-11079NG, 2001 WL 1609366, (Mass D. 2001) (a copy of the

Page 8

unpublished case is attached hereto as **"Exhibit G"**). In the *Joe Hand Promotions* case the Plaintiff was the holder of distribution rights to the signals of a certain boxing match. The Plaintiff alleged that bar in a men's social club had intentionally intercepted the boxing match without authorization in violation of Title 47 U.S.C. §605(a). Judge Neiman estimated actual damages at approximately $640.00 but, still pursuant to the baseline statutory damages provision, he assessed the baseline damages at $3,200.00.  Judge Neiman said:

> Defendants cannot expect that, by ignoring the action, they will only be subject to the costs they would have paid had they acted legitimately. *See Iowa State Univ. Research Found.,* 475 F.Supp. at 83 (noting that copyright infringer "cannot expect to pay the same price in damages as it might have paid after freely negotiated bargaining, or there would be no reason scrupulously to obey the copyright law"). Moreover, Defendants should have expected that their statutory violations would result in an enhancement of damages as a future deterrent not only to them but to others. *See Cable/Home Communication Corp. v. Network Productions, Inc.,* 902 F.2d 829, 852 (11th Cir.1990) (recognizing goal of deterrence and noting that court may consider party's attitude in determining statutory damage award); *Broadcast Music, Inc.,* 919 F.Supp. at 660 (similar); *Cablevision Systems New York City Corp. v. Faschitti,* 1996 WL 48689, at *2 (S.D.N.Y. Feb. 7, 1996) (similar); *Rodgers v. Eighty Four Lumber Co.,* 623 F.Supp. 889, 892 (W.D.Pa.1985) (noting "common thread" in statutory damages cases that additional award for willfulness will put violators "on notice that it costs less to obey the ... laws than to violate them"). *Id at 123*

Bear in mind that the additional baseline statutory damages assessed against the defendant were not assessed because of the willful nature of the violation.  Judge Neiman concluded that to simply assess damages at an amount equal to actual damages would have no deterrent value.  In fact, Judge Neiman went on to assess an additional $2,500.00 against the defendant for the willfulness of the offense.

There are also similar cases from the Southern District of New York where courts have specifically added statutory damages against noncommercial end-users for the purpose of deterrence.  See *Time Warner v Domsky*, No. 96 Civ. 6851, 1997 U.S. Dist. LEXIS 13505

Page 9

(S.D.N.Y. Sept. 2, 1997) (**"Exhibit E"**), and *Cablevision v Collins* 2004 WL 1490307 (S.D.N.Y. 2004) (**"Exhibit F"**). The court in the *Domsky* case clearly set forth the deterrence reasoning when, after estimating the damages it said:

> While I find these amounts reasonably approximate, the lost revenue from the use of a pirate box, it would not be sufficient deterrence if the damages payable by a violator were limited to the value of the stolen services. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid. *Id* at 18

The *Domsky* court then went on to double its estimate of damages as a form of deterrence when assessing the statutory damages. This reasoning was recently explicitly followed in the *Collins* case where that court also doubled its estimate of damages as a form of deterrence when assessing statutory damages.

Following the line of reasoning set forth in these cases, this court could clearly assess statutory damages over and above a reasonable estimate of actual damages. In light of the fact that the Plaintiff is seeking statutory damages of $9,000.00 which is only slightly higher than the estimate of actual damages, $8,934.12, such a statutory damage award is justified.

### C. Assessing Statutory Damages by Considering the Totality of Circumstances.

Some courts have assessed statutory damages without specifically discussing the parameters utilized when assessing them. See *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), aff'd, 224 F.2d 430 (2d Cir. 2000) *Community Television Systems, Inc. v. Caruso*, 134 F. Supp. 2d 455 (D. Conn. 2000), aff'd, 224 F.2d 430 (2d Cir. 2000). After a trial, the Connecticut District Court in the *Community Television* case assessed statutory damages at $10,000.00 per defendant for their unauthorized interception of television signals with black boxes in violation of 47 USC § 605(a). The Second Circuit court of appeals

upheld the amount of statutory damages award but ruled that the husband and wife should not each be assessed separate statutory damage awards.

The trial court in the *Community Television* case did not specifically discuss the amount of actual damages and it did not mention the word "deterrence"; rather it made general discussions as to the merits of the case. The trial court pointed out that 47 U.S.C. § 605(e)(3)(C)(i)(II) called for statutory damages "as the court considers just". The court then went on to assess the maximum statutory damages. Saying:

> Here, the court considers the maximum in statutory damages, to be assessed against each defendant individually, to be just. Each defendant here appears to have employed a strategy of simply making it as difficult as possible for TCI to vindicate its rights. There was no merit to the arguments raised on behalf of the defendants at trial as to purported flaws in TCI's proof. In substance, each defendant merely rested on his or her Fifth Amendment right not to incriminate him or herself and the fact that the plaintiff has the burden of proof. No defendant gave any indication of having any concern about what would be "just" in this case. Moreover, as noted above, the defendants' actions have negative implications for TCI not only in terms of lost revenues, but also in terms of the good will of its honest customers and the technical integrity of TCI's cable system. This is in addition to the loss of tax revenues for the State of Connecticut. While others could be equally deserving of having assessed against the maximum in statutory damages, it is difficult to imagine a case where a defendant would be more deserving of being required to pay the maximum in statutory damages than is each of these defendants.

Accordingly, this Court could consider generally the merits of the case when assessing statutory damages. In this civil action, the Plaintiff, even without a default, has a very good case against the Defendant. The Defendant's total lack of response should not be considered anything less than, at a minimum, disrespect for this Court and these proceedings. Accordingly, this Court could assess significant statutory damages based upon these general factors without reference to specific factors referenced above.

**D.  Conclusion as to Statutory Damages Pursuant to 47 U.S.C. §605(e)**

Based upon the statute, the arguments and the judicial decisions cited above, statutory damages in this case Pursuant to 47 U.S.C. §605(e) the $9,000.00 amount that the Plaintiff seeks is fair and just..

### IV.   Attorney's Fees and Costs

**Attorney's Fees**

Title 47 U.S.C. § 605(e)(3)(B)(iii) provides that the Court should direct the recovery of full costs, including awarding reasonable attorneys fees to aggrieved party who prevails. The First Circuit follows the "lodestar" approach when awarding attorney's fees pursuant to a Federal statutory authorization.  See, *Furtado v. Bishop*, 635 F.2d 915, (1st Cir. 1980).  Using the "lodestar" approach, the Court would normally multiply the number of hours worked by a reasonable hourly rate.  Utilizing the "lodestar" approach, the Court would, in essence, multiply the reasonable number of hours worked by a reasonable hourly rate

In the Plaintiff's Amended Complaint the Plaintiff specifically requested an attorney's fee and cost award of $850.00 upon the default of the Defendant. The Plaintiff would be entitled to more than this amount pursuant to the "lodestar" approach but for the sake of clarity and simplicity, the Plaintiff is in essence seeking this lesser, lump sum amount for Attorneys fees and costs. The $850.00 figure is associated with the attorneys' fees with reference to prosecuting the case to default under usual circumstances. The $850.00 figure and does not include additional Attorney's fees associated with the Amended Complaint and multiple defaults and multiple motions for Default Judgment in this action.  The Plaintiff is not seeking Attorneys' fees associated with those items.

Page  12

**Costs**

The Plaintiff is also entitled to costs incurred in this action, specifically:

| | | |
|---|---|---:|
| a. | Filing Fee: | $150.00 |
| b. | Sheriff's Service Fee: | $ 58.10 |

**TOTAL COSTS:** **$208.10**

## V.  CONCLUSION

For the reasons set forth above, the Plaintiff, DIRECTV, respectfully requests that this Court:

(1) Award to DIRECTV statutory damages in the amount of $9,000.00 , plus costs and attorneys' fees in the amount of $850.00;

(2) Award to DIRECTV costs of $208.10;

(3) Award to DIRECTV attorneys' fees in the amount of $850.00;

Respectfully Submitted for the Plaintiff,

 8/12/2005  
Date

___/s/ John M. McLaughlin____  
John M. McLaughlin (BBO: 556328)  
**Green, Miles, Lipton & Fitz-Gibbon LLP**  
P.O. Box 210  
77 Pleasant Street  
Northampton, MA 01061-0210  
(413) 586-0865