United States Court of Appeals
Fifth Circuit

**F I L E D**

August 9, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-50793

DIRECTV INC,

                                   Plaintiff-Appellant,

versus

RANDALL MINOR,

                                   Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, BARKSDALE, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

    DIRECTV, Inc. ("DTV") appeals the district court's grant of summary judgment on its claims for illegal interception of its satellite transmissions in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a), and for modification of a pirate access device in violation of 47 U.S.C. § 605(e)(4).  We vacate and remand.[1]

---

[1] We heard oral argument in this case on May 11, 2005, with two related cases, which are also issued today.  See *DIRECTV, Inc. v. Budden*, No. 04-20751, --- F.3d ---- (5th Cir. Aug. 9, 2005); *DIRECTV, Inc. v. Robson*, No. 04-30861, --- F.3d ---- (5th Cir. Aug. 9, 2005).

I

DTV is a nationwide provider of direct-to-home satellite programming, including movie channels, sports, major cable networks, and local channels.  A typical DTV system consists of a small DTV-compatible satellite dish, a DTV receiver, and a DTV access card.  Although DTV encrypts its transmissions to guard against unauthorized access, numerous "pirate access devices"[2] have been developed to allow users to view DTV programming without paying for it, usually by altering a valid access card.

Defendant Randall Minor is a professional network engineer and website administrator, with a degree in computer information systems in addition to post-graduate training.  DTV first became aware of Minor following its execution of a writ of seizure at a mail shipping facility used by a device merchant named PC Ease. Records acquired subsequent to the raids indicate that Minor purchased a Vector Fusion Unlooper ("the unlooper") from PC Ease in April 2001.  DTV claims that the unlooper has no commercially significant purpose other than to modify DTV access cards, and that its primary function is to gain unauthorized access to DTV satellite programming.  More specifically, the unlooper can be used to alter or restore functionality to DTV access cards that have

---

[2] *See DIRECTV, Inc. v. Nicholas*, 403 F.3d 223, 224 (4th Cir. 2005) ("pirate access devices" are those devices "that can surreptitiously steal DIRECTV's transmissions"); *DIRECTV, Inc. v. Brown*, 371 F.3d 814, 816 (11th Cir. 2004) ("pirate access devices" are those used "to circumvent this conditional access technology and allow users to receive the satellite transmissions provided by DTV without paying DTV any fees"); *see also DIRECTV, Inc. v. Barnes*, 302 F. Supp. 2d 774, 776 (W.D. Mich. 2004).

been disabled by misuse or by an ECM;[3] it acts as a smart card reader/writer, but with additional capabilities. Upon further investigation, DTV discovered that Minor had a DTV dish installed on the outside of his house. Minor is not a DTV subscriber.[4]

Minor claimed that he ordered the unlooper to prevent "[his] son, kids, anybody in the family from accessing my [computer] system when I wasn't home." He paid between $100 and $300 for it; however, he claims that after he was unable to make the unlooper work to secure his computer, and after he was unsuccessful in soliciting help via telephone, he threw the device away.

As to the DTV dish, he claimed that he had "a company come in and do . . . wiring . . . for telephone, cable[--]any possible communications."  Minor later described this company as "just workers in the area that needed some extra money."  In his appellate brief Minor explained the dish as an improvement that would increase the value of his home. Although Minor testified that the dish was "to be used as an antenna" and that "[t]here's a round device over the top of it . . . that gathers reception for local channels," according to DTV, the satellite dish attached to Minor's house is incapable of functioning as an antenna to receive

---

[3] In order to combat the proliferation of illegally modified access cards, DTV periodically sends out electronic countermeasures ("ECMs") embedded within its satellite transmissions. ECMs detect and disable modified access cards, sending them into an infinite "loop." *See Robson*, No. 04-30861, at 4 n.4, --- F.3d at ---- n.4.

[4] DTV also produced evidence that at some point after the commencement of suit Minor accessed a website that offers advice to would-be pirates.

local station broadcasts.

Before us are DTV's claims against Minor for violations of the Communications Act of 1934,[5] as well as for violations of Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Wiretap Act).[6] Specifically, DTV brought claims against Minor for illegal interception of its satellite transmissions, in violation of 47 U.S.C. § 605(a) and 18 U.S.C. § 2511(1)(a), and for the illegal modification of a device primarily used for piracy, in violation of 47 U.S.C. § 605(e)(4).[7]

The district court granted summary judgment to Minor on these three claims.[8] The court treated as dispositive its conclusion that there was insufficient evidence to support a factual finding that Minor intercepted DTV's signal.[9] DTV timely appeals.

II

We review a grant of summary judgment *de novo*, applying the

---

[5] 48 Stat. 1064, as amended (codified in relevant part at 47 U.S.C. § 605).

[6] Pub. L. No. 90-351, tit. III, § 802, 82 Stat. 211, 212-23, as amended (codified at 18 U.S.C. §§ 2510-2522).

[7] The remaining claims are not at issue here. DTV previously dismissed its claim for civil conversion and does not challenge the district court's ruling regarding claims per 18 U.S.C. § 2512 and Tex. Civ. Prac. & Rem. Code § 123.002.

[8] *See DIRECTV, Inc. v. Minor*, No. SA-03-CA-782-OG (W.D. Tex. Jun. 29, 2004).

[9] *See id.* at 2 ("In order to prevail on these claims [under § 605(a) and § 605(e)(4)], Directv must prove that Minor received, assisted in receiving, or intercepted DIRECTV's proprietary satellite transmissions."); *id.* at 5 ("Directv has failed to meet its burden to raise a fact issue that Minor actually intercepted and then divulged its communication."); *id.* at 7 (granting summary judgment on § 2511 claim because DTV "has failed to raise a fact issue that Minor intercepted Directv's signal").

same standard as the district court.[10]  "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."[11]

The district court was obligated to "consider the evidence in the light most favorable"[12] to DTV as the nonmovant, and to "indulge every reasonable inference from the facts" in favor of DTV.[13]  If a movant alleges an absence of specific facts necessary for a nonmovant to establish an essential element of its case, then the nonmovant "must respond by setting forth 'specific facts showing that there is a genuine issue for trial.'"[14]  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."[15]

### III

DTV urges that it presented sufficient evidence to forestall

---

[10] *See Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Caboni v. Gen. Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002); FED. R. CIV. P. 56.

[11] *Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c)).

[12] *Caboni*, 278 F.3d at 451 (internal quotation marks and citation omitted); *see Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

[13] *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir. 1993).

[14] *Slaughter v. S. Talc Co.*, 949 F.2d 167, 170 (5th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

[15] *Caboni*, 278 F.3d at 451 (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

summary judgment on its claims for violation of § 605(a) and § 2511(1)(a). We agree.

Section 605(a) provides, in part, that

> no person receiving [or] assisting in receiving . . . any interstate or foreign communication by wire or radio shall divulge or publish the . . . contents . . ., except [in authorized circumstances.] No person not being authorized by the sender shall *intercept* any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication . . . for his own benefit or for the benefit of another not entitled thereto.[16]

Section 605(e)(3)(A), in turn, provides a civil remedy for "[a]ny person aggrieved by any violation of [§ 605(a)] or [§ 605(e)(4)]."[17]

Similarly, § 2511(1)(a) imposes criminal liability upon any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication."[18] A civil action is provided in § 2520(a): "[A]ny person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be

---

[16] 47 U.S.C. § 605(a) (emphasis added).

[17] 47 U.S.C. § 605(e)(3)(A).

[18] 18 U.S.C. § 2511(1)(a).

appropriate."[19]

DTV's claims per § 605(a) and § 2511(1)(a) hinge here upon whether DTV has created a triable issue on the key element of actual interception.[20] While circumstantial evidence can serve this end,[21] we have cautioned that where "circumstantial evidence of interception is confined largely to demonstrating the purchase and possession of the devices at issue, rather than the use of those devices to intercept DTV's transmissions," summary judgment may be proper.[22]  In *DIRECTV, Inc. v. Robson*, we affirmed summary judgment for the defendant where evidence was lacking as to other DTV components--dish, receiver, and access card--and the quantum of evidence added up to little more than purchase and possession.[23] As we noted in *Robson*, there is "no civil action for merely possessing or purchasing a pirate access device."[24]

The evidence in the present case differs in that there is a DTV dish on the roof of an individual who is not and has never been a DTV subscriber.  With the dish, then, comes the possibility of surreptitious interception, recognizing that the other equipment is

---

[19] 18 U.S.C. § 2520(a).

[20] *See Robson*, No. 04-30861, at 9; --- F.3d at ----.

[21] *See id.; Walker v. Darby*, 911 F.2d 1573, 1578 (11th Cir. 1990).

[22] *Robson*, No. 04-30861, at 11; --- F.3d at ----.

[23] *See id.*

[24] *Id.; see id.* at 11-12 (citing, *inter alia*, 18 U.S.C. § 2520(a); 18 U.S.C. § 2512(1)(b); *DIRECTV, Inc. v. Treworgy*, 373 F.3d 1124, 1129 (11th Cir. 2004)).

capable of being kept in secret; in *Robson*, evidence of such a visible component--necessary for actual interception--was lacking. Of course, whether or not Minor's explanations for this particular fixture are credible is not something we gauge here. Together with his purchase of the unlooper, these facts are sufficient to raise a question whether Minor used the unlooper to intercept DTV's transmissions. Indulging all reasonable inferences, we are persuaded that the evidence here takes us sufficiently beyond purchase and possession of the unlooper; that is, the admitted purchase of the unlooper in conjunction with the DTV dish on the home of this technically savvy non-subscriber creates a triable fact issue on the key element of interception.

IV

DTV also argues that summary judgment should not have been granted as to its claims under § 605(e)(4), per the corresponding civil action provided for in § 605(e)(3)(A), for modification of a pirate access device. We agree.

Section 605(e)(4) reads:

> Any person who manufactures, assembles, *modifies*, imports, exports, sells, or distributes any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of satellite cable programming, or direct-to-home satellite services, or is intended for any other activity prohibited by [§ 605(a)], shall be [criminally liable].[25]

---

[25] 47 U.S.C. § 605(e)(4) (emphasis added).

In its brief on appeal, DTV describes its claim for violation of this provision as follows:

> DIRECTV alleges that Minor violated 47 U.S.C. § 605(e)(4) by using a device called an unlooper to illegally modify a DIRECTV access card to enable the access card to decrypt DIRECTV's satellite transmissions.

The district court disposed of this claim based on its conclusion that it was unsupportable absent a showing of actual interception,[26] and we are persuaded that this was in error. Nothing on the face of § 605(e)(4) requires interception, as it addresses "[a]ny person" who engages in any of the listed activities, including "modifi[cation]."[27] Further, no interception is required for DTV to qualify as "[a]ny person aggrieved" in order to bring a civil action under the terms of § 605(e)(3)(A).[28] The district court cited a portion of § 605(d)(6)--which is a provision that provides guidance as to "any person aggrieved"[29]--in reaching its conclusion that civil claims brought for violation of § 605(e)(4) require

---

[26] *See supra* note 9.

[27] 47 U.S.C. § 605(e)(4).

[28] *See* 47 U.S.C. § 605(e)(3)(A) ("Any person aggrieved by any violation of [§ 605(a)] or [§ 605(e)(4)] may bring a civil action in a United States district court or in any other court of competent jurisdiction.").

[29] 47 U.S.C. § 605(d)(6) provides:
> [T]he term "any person aggrieved" shall include any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming, and, in the case of a violation of [§ 605(e)(4)], shall also include any person engaged in the lawful manufacture, distribution, or sale of equipment necessary to authorize or receive satellite cable programming.

actual interception.[30]  This implicitly treats § 605(d)(6) as an exhaustive list of those who fit within the scope of "any person aggrieved."  We rejected such a contention today in a related case and need not plow the same ground here.[31]  We offer no opinion on whether Minor's alleged actions using the unlooper to alter a DTV access card qualifies as "modifi[cation]"[32] within the meaning of § 605(e)(4).  We leave that to the district court to consider again in the first instance.  We further decline to address Minor's additional arguments raised for the first time on appeal.

V

For the foregoing reasons, we vacate the district court's summary judgment in favor of Minor.  The evidence presented permits a reasonable of inference of actual interception, as is required for civil claims alleging violations of § 605(a) and § 2511(1)(a).  Actual interception is not required to sustain a § 605(e)(4) claim.

VACATED and REMANDED.

---

[30] *See Minor*, No. SA-03-CA-782-OG, at 2.

[31] *See Budden*, No. 04-20751, at 9-14, --- F.3d at ----; *see also Robson*, No. 04-30861, at 24; --- F.3d at ----.

[32] *Cf. MCI Telecomms. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225 (1994); *United States v. Crawford*, 52 F.3d 1303, 1309-10 (5th Cir. 1995); *United States v. Harrell*, 983 F.2d 36, 37-39 (5th Cir. 1993).