Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
DIRECTV, INC., a California Corporation, Plaintiff,
v.
Christopher GRIEPSMA, Bob Smith, Eric W. Haefele, Aaron K. Washington, James Ognenovic, Steve Kozak, Ray Hill, Peter Buda, Aaron Giblaski, Stephen Cole, and Aaron K. Washington, Defendants.
No. 03-CV-6243-CJS-JWF.
March 11, 2005.

Paul I. Perlman, Hodgson Russ, LLP, Buffalo, NY, for Plaintiff.
Joseph S. Damelio, Nira T. Kermisch, Rochester, NY, for Defendants.

DECISION AND ORDER

SIRAGUSA, J.

I. INTRODUCTION

*1 Plaintiff DirecTV, Inc. ("DirecTV") alleges in a four-count complaint filed on November 24, 2003, that defendant Peter Buda ("Buda") violated, *inter alia* 47 U.S.C. § 605(e)(4) (second cause of action) by purchasing and using Pirate Access Devices that are designed to permit viewing of DirecTV's scrambled television programming without authorization by or payment to plaintiff. The case is now before the Court on defendant Buda's motion for summary judgment on the second cause of action pursuant to Federal Rule of Civil Procedure 56, and DirecTV's cross-motion for discovery under Rule 56(f). For the reasons stated below, Buda's application is denied and DirecTV's is granted.

II. PROCEDURAL AND FACTUAL BACKGROUND

DirecTV commenced this action by filing a complaint on May 22, 2003. In that complaint, DirecTV alleges that it is the nation's leading direct broadcast satellite system, delivering over 225 channels of television and other programming to more than ten million homes and businesses in the United States. Further, plaintiff maintains that it encrypts-electronically scrambles-its satellite transmissions to provide security for and prevent unauthorized viewing of its satellite television programming. DirecTV also states in its complaint that it offers its television programming to residential and business customers either by a subscription, or on a pay-per-view basis only, and that each customer is required to obtain a DirecTV Access Card and other system hardware, including a small satellite dish, and create an account with DirecTV. DirecTV further alleges that upon its activation of the Access Card, the customer can receive and view in a decrypted format (*i.e.,* unscrambled) those channels to which the customer has subscribed or otherwise made arrangement to purchase. (Complaint ¶¶ 1-2.)

In its complaint, DirecTV states that on or about May 25, 2001, with the assistance of local law enforcement, it executed several writs of seizure upon a mail shipping facility used by several major sources of pirate technologies, including Vector Technologies, DSS-Stuff, DSSPro, DSS-Hangout, Whiteviper Technologies, Meadco, PCEase, Intertek Technologies, Shutt, Inc., and Canadian Security and Technology. During and subsequent to the raids, DirecTV contends that it came into possession of a substantial body of sales and shipping records, e-mailed communications, credit card receipts, and other materials. Paragraph 14 of the complaint contains factual allegations pertaining specifically to Buda. There, DirecTV alleges the following:

Defendant Peter Buda is a resident of Rochester, New York. Upon information and belief, beginning in or about April 2001, defendant Buda purchased two or more Pirate Access Devices from Canadian Security. Defendant placed each order by using interstate or foreign wire facilities, and received his orders via the Postal Service or commercial mail carriers. Specifically, these illegal purchases included:

**\*2** (a) On or about April 23, 2001, defendant Buda purchased two Pirate Access Devices, consisting of a printed circuit board device called an Emulator and a printed circuit board device called an Unlooper, from Canadian Security and Technology. The devices were shipped to defendant Buda at his address in Rochester, New York.

(Complaint ¶ 14.)

DirecTV's complaint raises three claims against Buda: (1) unauthorized reception of satellite signals in violation of 47 U.S.C. § 605(a); unauthorized interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a); and (3) possession of Pirate Access Devices in violation of 18 U.S.C. § 2512(1)(b). (Complaint ¶¶ 20-31.)

Buda has moved for summary judgment on the basis that the complaint merely alleges possession of Pirate Access Devices and that "[t]here is no allegation as to Defendant Buda that he received or assisted in receiving any communications for his own benefit or for the benefit of another," and "Plaintiff is not able to prove, under any circumstances, that Defendant Buda ever used the alleged devices for his own benefit or for the benefit of another⋯" (Buda's Mem. of Law at 5.)

In response, DirecTV has cross-moved for discovery under Rule 56(f), arguing that, "In order for DirecTV to adequately present a defense to the defendant's summary judgment motion, the defendant must first satisfy these discovery demands. DirecTV can not respond to the affidavits of the defendant and Risa Benette submitted in support of his motion, because the affidavits present factual inconsistencies that can only be resolved through discovery." (DirecTV Mem. of Law at 4.)

### III. LEGAL STANDARDS

*Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. See Amaker v. Foley, 274 F.3d 677 (2d Cir.2001); Chipollini v. Spencer Gifts, Inc., 814 F.2d 893 (3d Cir.1987) ( *en banc* ). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**\*3** Once that burden has been met, the burden then shifts to the non-moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. Catanzaro v. Weiden, 140 F.3d 91, 93 (2d Cir.1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In determining whether a genuine issue

exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc., 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)*. Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993); *Anderson,* 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee,* 271 F.3d 38, 47 (2d Cir.2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe,* 538 U.S. 1, 123 S.Ct. 1160, 155 L.Ed.2d 98 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.,* 898 F.2d 946 (3d Cir.1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Knight v. United States Fire Ins. Co.,* 804 F.2d 9 (2d Cir.1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections,* 84 F.3d 614, 619 (2d Cir.1996).

*Additional Discovery under Rule 56(f)*

Federal Rule of Civil Procedure 56(f) provides:
Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.
FED. R. CIV. P. 56(f). Courts have interpreted "Rule 56(f) to provide that when a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *G-I Holding, Inc. v. Baron & Budd,* 218 F.R.D. 409, 413 (S.D.N.Y.2003).

IV. ANALYSIS

*\*4* The motions in this case can be decided by answering one question: if DirecTV can prove that Buda purchased and took delivery on a Pirate Access Device, is that sufficient to show violations of the two statutes plead? If so, then the Court must find that DirecTV is entitled to further discovery. If not, then the Court must grant Buda's motion. DirecTV's First Claim pleads a cause of action under 47 U.S.C. § 605(a). That statute reads as follows:
§ 605. Unauthorized publication or use of communications
(a) Practices prohibited. Except as authorized by chapter 119, title 18, United States Code [18 U.S.C. §§ 2510 *et seq.*], no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney, (2) to a person employed or authorized to forward such communication to its destination, (3) to proper accounting or distributing officers of the various communicating centers over which the communication may be passed, (4) to the master of a ship under whom he is serving, (5) in response to a subpena issued by a court of competent jurisdiction, or (6) on demand of other lawful authority. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being

entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a) (1996). The Second Claim states a cause of action under 18 U.S.C. § 2511(1)(a), which reads on pertinent as follows:

(1) Except as otherwise specifically provided in this chapter [18 U.S.C. §§ 2510 et seq.] any person who-

*5 (a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication; ···
shall be subject to suit as provided in subsection (5).

18 U.S.C. § 2511(1)(a) (1994).

Although not addressed in its papers, DirectTV stated at oral argument that the fact of purchase and delivery of the Pirate Access Devices leads to a reasonable and rebuttable presumption that the devices were used for their intended purposes, *e.g.,* illegal descrambling of DirecTV's signals. DirecTV cited to *Directv, Inc. v. McCool,* 339 F.Supp.2d 1025 (M.D.Tenn.2004). There, the moving defendant claimed that a friend purchased the Pirate Access Device using the defendant's credit card and e-mail address, had shipped to defendant's address thereafter, and that the friend had moved away. The district court denied the defendant's summary judgment motion, stating that "the evidence before the Court is sufficient to create a genuine issue of material fact as to whether Defendant violated" the two statutes cited above. The district court further held, citing to Second Circuit case law, that

[t]he undisputed purchase of the device in Defendant's name using his credit card, his computer, his e-mail address, and his shipping address creates a rebuttable presumption of use. *See Cmty. Television Sys., Inc. v. Caruso,* 284 F.3d 430, 432 (2d Cir.2002) (affirming district court's ruling that although there was no direct evidence that defendants used descramblers to illegally view pay-per-view cable programming, court could presume from defendants' purchase of descramblers that defendants had used such devices); *DIRECTV, Inc. v. Jones,* No. 02-2834, 2003 U.S. Dist. LEXIS 23857 (W.D.Tenn. Aug. 26, 2003) (Donald, J.) (holding that "Defendant's possession of the device in question leads to a factual inference, when construed in a light most favorable to Plaintiff, that the alleged interception could have occurred.").

*McCool,* 339 F.Supp.2d at 1033-34. In a footnote, the district court cited additional authority on this point:

*See also DirecTV, Inc. v. Trone,* No. CV 02-05194 PA, 2003 U.S. Dist. LEXIS 23835 (C.D.Cal. Feb. 10, 2003) (granting partial summary judgment in DIRECTV's favor finding that "there is no evidence before the court that Bootloaders performed any lawful function."); *DIRECTV, Inc. v. Hendrix,* No. CIV F 02-6493, 2003 U.S. Dist. LEXIS 26284, (E.D.Cal. Sept. 9, 2003) (finding that plaintiff's evidence is such that a reasonable trier of fact could infer that defendant used the devices, thus making summary judgment inappropriate on plaintiff's § 605(a) claims); *DIRECTV, Inc. v. Holladay,* No. 6:01-cv-0056, 2003 U.S. Dist. LEXIS 26006 (E.D.Tex. Mar. 13, 2003) (same).

*McCool,* 339 F.Supp.2d at 1034 n. 3. In *Cmty. Television Sys., Inc. v. Caruso,* on which the district court relied, the following facts were before the Second Circuit on appeal:

*6 In July 1994, the FBI seized the computer of Robert R. Radil, who operated a business

involving the manufacture, assembly, sale, and installation of illicit cable descramblers. Radil's devices descramble cable programming, enabling those who install the devices to have free and unlimited access to premium channels and pay-per-view movies and special events. The devices are "non-addressable," meaning that TCI cannot detect the unauthorized viewing from its central offices.

Radil recorded on his computer files the details of the orders and delivery of the descrambler devices he sold. Culling the names of customers from Radil's computer files and checking with the telephone company and the Department of Motor Vehicles, the FBI compiled a master list of names, addresses, and telephone numbers of Radil's customers ("FBI list").

TCI obtained the FBI list and in July 1997, commenced this action, requesting injunctive and monetary relief under 47 U.S.C. §§ 553(a) and 605(a) against 129 alleged purchasers of Radil's descramblers. As to all but seven defendants, the claims were disposed of by settlement, default judgment, or dismissal.

* * *

The principal evidence presented to establish the appellants' liability was a "Filled Orders" list from Radil's computer files. The list described the orders [* *6] for descrambling units that Radil sold and installed. With respect to each of the appellants, Radil's "Filled Orders" list states the customer's name, the television channel selected to receive the customer's cable transmissions, the date the order was placed, the date of delivery, and the type of descrambler ordered.

Radil's records contain one line of information for each unit ordered. The records reflect the following purchasers of units: "Tom/Michelle White," "Michael/Julie Caruso," and "Angela/Chuck Mingrone." The Whites, Carusos, and Mingrones were each married couples living in homes where a descrambler was installed; the Carusos and the Mingrones are now divorced; Angela Mingrone is not a defendant. Radil testified that he personally installed the descrambler units. He also testified that he had no specific recollection of dealing with any of the appellants personally.

Throughout the pretrial depositions and in interrogatories each appellant, except Charles Mingrone, invoked his or her Fifth Amendment privilege against self-incrimination when asked whether he or she had ordered or received a descrambler from Radil, and where the present location of the descrambler might be. Mingrone testified at his deposition that he did not order a descrambler from Radil, did not know Radil, and had never had any contact with Radil. He invoked his Fifth Amendment privilege, however, when asked whether he had used a descrambler, whether anyone living at his address had ordered a descrambler from Radil, and whether his ex-wife was in possession of the descrambler. None of the appellants testified at trial.

*7 TCI's complaint alleged that the defendants purchased descramblers and used, or assisted others in using, those devices in violation of 47 U.S.C. §§ 553 and 605. In his Opinion of March 20, 2000, Judge Thompson held that the defendants had violated both sections 553 and 605.

Cmty. *Tv. Sys. v. Caruso,* 284 F.3d 430, 432-434 (2d Cir.2002).

In his memorandum of law, Buda discusses this case and distinguishes it on the basis that no proof has been provided here that the Pirate Access Devices were "installed." (Buda Mem. of Law at 8.) However, reviewing the facts presented by the Second Circuit, the Court determines that this difference is not dispositive. The evidence at trial in *Caruso* was very similar to the evidence here-records of purchases and delivery of Pirate Access Devices. No defendants testified at the bench trial in *Caruso,* and it does not appear that any defendant in *Caruso* provided testimony to show that the purchased Pirate Access Device there was actually installed. *See id.* at 433-34 ("each appellant, except Charles Mingrone, invoked his or her Fifth Amendment privilege against self-incrimination when asked whether he or she had ordered or received a descrambler from Radil, and where the present location of the descrambler might be···· Mingrone invoked his Fifth Amendment privilege, however, when asked whether he had used a descrambler,

whether anyone living at his address had ordered a descrambler from Radil, and whether his ex-wife was in possession of the descrambler.").

Similarly, in this case, Buda and his fiancée have denied purchasing a Pirate Access Device, yet DirecTV has alleged that two were purchased on Buda's credit card and delivered to Buda's address. The Court finds that these allegations are sufficient to justify further discovery under Rule 56(f). The Court has also considered Buda's reply, where he contends that he is entitled to summary judgment because DirecTV has no evidentiary proof in admissible form in response to the motion to show that Buda purchased the Pirate Access Devices. Buda also argues that DirecTV must have had some proof at the time it filed the complaint, otherwise, the action could not have been commenced. The Court finds, however, that Rule 56(f) permits further discovery here even though DirecTV has not filed affidavits in opposition to the substantive motion for summary judgment. *See* Commer. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc., 271 F.3d 374, 386 (2d Cir.2001) ("a plaintiff is not required to know at the time of pleading all facts necessary to establish the claim."). Because of the rebuttable presumption discussed above, DirecTV has sufficiently shown that it needs additional discovery to be able to present facts necessary to defend the motion. All further discovery motions should be made returnable before Magistrate Judge Feldman, to whom the case has been referred pursuant to 28 U.S.C. § 636.

### V. CONCLUSION

Buda's motion (# 41) for summary judgment is denied without prejudice, and DirecTV's cross-motion (# 48) for discovery is granted. Further motions pertaining to discovery shall be made returnable before Magistrate Judge Feldman.
*8 IT IS SO ORDERED.
W.D.N.Y.,2005.
DirecTV, Inc. v. Griepsma
Slip Copy, 2005 WL 608250 (W.D.N.Y.)